Gordon, Appellant, *v.* Eureka Casualty Company.

Argued September 12, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

Before BURCH, J.

*Theodore R. Mann,* with him *Maximillian J. Klinger,* for appellant.

*Norman Paul Harvey,* with him *John J. McDevitt, 3rd,* for appellee.

OPINION BY WATKINS, J., November 14, 1958:

The Eureka Casualty Company, the appellee, issued a "residence and outside theft" policy, which covered a diamond ring, to Stanley E. Gordon, the appellant. Mrs. Gordon while baking in their kitchen removed the ring and placed it in the pocket of her

dress. She soiled the dress, removed it and sent it to the dry cleaner.

The same evening she remembered having put the ring in the pocket of the dress and remembered also that there was a hole in the pocket of the dress. She, Stanley, and their maid searched the floors of their home for the ring. She called the cleaner and found that the ring was not in the pocket of the dress and that there was a hole in the pocket. The cleaner searched his premises for it and could not find it. The maid, who had helped in the search for the ring in the Gordon home, left for her day off and without notice to her employers, never returned to work.

Following the disappearance of the ring and the refusal of the company to pay under the terms of the policy, the appellant brought this action in assumpsit for the value of the ring. The jury brought in a verdict for the appellant in the sum of Two Thousand One Hundred Fifteen ($2115) Dollars, the full value of the claim with interest. The Municipal court of Philadelphia dismissed a motion for a new trial but granted the motion of the appellee for judgment notwithstanding the verdict. This appeal followed.

The key words of the policy, at issue, appear under the definition of the word theft, where it included "mysterious disappearance of any insured property . . . shall be presumed to be due to theft."

In *Sigel v. American Guar. & Liab. Ins. Co.*, 173 Pa. Superior Ct. 434, 98 A. 2d 376 (1953), mysterious disappearance was defined as, "any disappearance or loss under unknown, puzzling or baffling circumstances which arouses wonder, curiosity or speculation, or circumstances which are difficult to understand or explain. A mysterious disappearance is a disappearance under circumstances which excite and at the same time baffle, wonder or arouse curiosity."

As Judge RENO said in this case at page 437, "A presumption is an inference as to the existence of a fact not known, arising from its logical connection or association with other facts which are known or proved. *Sear's Estate*, 313 Pa. 415, 169 A. 776. Logically, the mere mysterious disappearance of personal property would not justify an inference of a felonious taking. However, if parties choose to create such a presumption by their contract no policy of the law forbids it. Doubtless, it was inserted in the policy to provide more liberal terms, afford larger protection, and to obviate the necessity of proving theft by direct evidence, without however converting the policy into indemnity insurance for lost or mislaid property. Cf. Miller v. Massachusetts Bonding & Ins. Co., 247 Pa. 182, 93 A. 320; Hamill v. Fidelity & Casualty Co. of N. Y., 104 Pa. Superior Ct. 602, 159 A. 205; Green v. Metro. Cas. Ins. Co. of N. Y., 100 Pa. Superior Ct. 274. But such a presumption is one of fact only, not a presumption of law. It creates a prima facie case for plaintiff, carrying his case to the jury upon evidence of a mysterious disappearance, even though there is no evidence of a felonious taking. From the evidence of a mysterious disappearance and the attendant circumstances the jury can find that a theft occurred; but the evidence is for the jury; and it may likewise find upon plaintiff's testimony alone, with or without countervailing evidence by defendant, that the disappearance was not due to a theft. Watkins v. Prudential Ins. Co., 315 Pa. 497, 173 A. 644."

As this is an appeal from a judgment notwithstanding the verdict, "the appellate court is required not only to read the testimony in the light most favorable to the adverse party, resolving all conflicts in his favor, but to give him the benefit of every fact and inference of fact pertaining to the issues involved

which may reasonably be deduced from the evidence." 9 Stan. Pa. Prac. Sec. 411 (1957 Supp.) *Waldov et ux. v. P. R. T.,* 120 Pa. Superior Ct. 304, 182 A. 129 (1935).

Here, from this record, the jury did find as a fact that there was a mysterious disappearance because of the failure, after diligent search of the home, to find the ring which had been placed in the pocket with a hole in it from which it must have fallen to the floor. The appellant was under no burden to prove that it was stolen because it might have been lost.

Once the jury has found that there was a mysterious disappearance the presumption set forth in the policy arises and the jury determined from the mysterious disappearance and the attendant circumstances that a theft had taken place. Other evidence may buttress or rebut the conclusion based on the contractual presumption that there was a theft and certainly here the suspicious actions of the maid buttressed the presumption.

There are a number of cases interpreting the clause in question and each must stand on its own peculiar facts. However, the proposition seems clear, that under circumstances where a jury could infer theft but could likewise infer loss by means other than theft, they will be permitted to come to a conclusion of theft because of the contractual presumption. Under such circumstances ordinarily a court would come to a conclusion that the matter may not be submitted to a jury because of the speculative nature of the case. However, the "mysterious disappearance" provision requires the submission of the matter to a jury. Of course, there must have been a possibility that there was a theft before the contractual presumption can apply. But unless the evidence of non-theft is so strong as to be determined as a matter of law the conclusion of the trier of fact must be sus-

tained. *Ruby v. Farmers Mutual Auto. Ins. Co.*, 79 N.W. 2d 644 (1956); *Caldwell v. St. Paul Mercury and Indemnity Company*, 49 So. 2d 570 (1950); *Loop v. United States Fidelity and Guaranty Company*, 63 So. 2d 247 (1953); *Deckler v. Travelers Indemnity Company*, 94 So. 2d 55 (1957).

It may be admitted that the ring may have been lost but it was because it is so often impossible for an insured to produce facts sufficient to establish a theft rather than a loss that the mysterious disappearance clause was inserted in the policy. *Levine v. Accident and Casualty Insurance Company*, 112 N. Y. S. 2d 397 (1952).

We believe that the conclusion of the court below that there was no mysterious disappearance because, "the 'insured' wife placed the ring in a pocket with a hole in it and turned it over to a cleaner. An object which falls through a hole in a pocket may be lost, but it is not stolen", was reversible error. This conclusion ignores the other evidence from which the jury could and did infer theft rather than a loss, and unjustifiably implies that the ring was turned over to the cleaner by Mrs. Gordon. Judge BURCH seems to indicate that a mysterious disappearance was not established because the evidence did not show that the ring was stolen.

The court below also erred in finding that Par. (d) under Coverage B in the policy which reads, "loss of property while in the charge of any laundry, cleaner, dyer, tailor or presser except by robbery or by theft through breaking and entering at their premises, or while in the mail or in the charge of any carrier for hire", did not constitute an exclusion clause but was part of the insuring agreement. It is clear beyond question that the paragraphs in Coverage B from (a)

to (f) are specific exclusions to this coverage and did constitute an affirmative defense which should have been specifically pleaded by the defendant.

Although Rule 1030 of the Pa. Rules of Civil Procedure as they existed in June, 1955 did not require that affirmative defenses, other than the sixteen set forth in the said rule, had to be pleaded as new matter. They nonetheless are required to be specifically pleaded in the answer where the action is one in assumpsit. The only change made by the amendment to the rules of civil procedure which became effective July 1, 1956 is that these affirmative defenses must now be pleaded under new matter. *Janco v. John Hancock Mutual Life Insurance Co.*, 160 Pa. Superior Ct. 230, 50 A. 2d 695 (1947).

However, the verdict returned by the jury now makes this question moot since coverage B under the policy was submitted to the jury for their consideration and they found as a fact that there was a mysterious disappearance of the ring in question and that as a matter of fact the ring was not lost while in the charge of any laundry, cleaner, dyer, etc. The question of the establishment of an affirmative defense, which defense is based on questions of fact is one for determination by the jury and not by the court, where there is sufficient evidence to substantiate the finding of the jury.

The judgment is reversed and judgment is now entered in favor of the appellant on the verdict.