Edward J. CONLIN, Jr., and Joanne D. Conlin, Plaintiffs and Respondents,

v.

DAKOTA FIRE INSURANCE COMPANY, a domestic corporation, Defendant and Appellant.

No. 8111.

Supreme Court of North Dakota.

Feb. 13, 1964.

The case was tried by the court without a jury on facts stipulated as follows:

"I.

"The Defendant is a private corporation for profit organized and existing under the laws of the State of North Dakota, is qualified to, and does engage in the business of writing fire insurance policies under the laws of the State of North Dakota, and it has its home office and principal place of business in Bismarck, Burleigh County, North Dakota.

"II.

"On June 28th, 1959, the Plaintiffs paid a premium to the Defendant and were issued in exchange therefor, a fire insurance policy, numbered H101018, which is attached hereto and incorporated in this Stipulation as Exhibit 'A,' which insured the Plaintiffs for a period of three years upon their residence at 615 Raymond Street in the City of Bismarck, North Dakota, as well as certain unscheduled personal property insured in the amount of Eight Thousand Dollars ($8,000), which policy of insurance was in full force and effect throughout all times material to this case.

"III.

"On April 23, 1961, at about 2:00 o'clock P.M., the Plaintiffs, husband and wife, who had previously purchased round trip tickets for transportation of themselves and their baggage aboard Delta Air Lines, Flight 763, from Chicago, Illinois, to New Orleans, Louisiana, checked in five pieces of luggage with Delta Air Lines at their O'Hare field station, which luggage was to have accompanied them aboard Flight 763. Subsequently, Flight 763 was cancelled and upon recommendation of Delta Air Lines, the Plaintiffs left their luggage checked with and in custody of the company and took a later

Breidenbach & Milhollan, Bismarck, for plaintiffs and respondents.

Conmy & Conmy, Bismarck, for defendant and appellant.

ERICKSTAD, Judge.

This is an appeal by the defendant from a judgment of the District Court of Burleigh County, obtained by the plaintiffs in the sum of $877.43. A trial de novo is requested.

Delta Air Lines flight from Midway Airport in Chicago to the same New Orleans destination.

"IV.

"Delta Air Lines undertook to transfer the five pieces of luggage which had been checked into their O'Hare field terminal, to their Midway air terminal and see to it that the luggage arrived in New Orleans with or before the Plaintiffs. The Plaintiffs do not know what happened to the luggage, but when they arrived in New Orleans and claimed their luggage, one piece with all its contents was missing. The Plaintiffs requested Delta Air Lines to search for and locate the missing item of luggage but they were informed by the Air Lines that the search was unsuccessful and the luggage and its contents have not to this day been located. The Plaintiffs do not know what has happened to the missing luggage and its contents.

"V.

"Under the provisions of the official tariff governing fares, filed with and approved by the Civil Aeronautics Board, the liability of Delta Air Lines for the lost luggage was One Hundred Dollars ($100), which amount has been paid to the Plaintiffs. The only exception to the hundred dollar limitation of liability is in event that excess valuation for the luggage is declared and applicable charges paid at the time the luggage is checked into the care of the air line. In this case the Plaintiffs did not declare a valuation in excess of One Hundred Dollars ($100). The Plaintiffs object to the consideration of these facts by the court on the grounds that they are not relevant but admit that the facts contained in this paragraph are true and correct.

"VI.

"The Plaintiffs were the owners of the missing luggage and its contents, which consisted of men's and women's wearing apparel, all of which had a fair market value of Nine Hundred Dollars ($900), all of which has been lost to the Plaintiffs.

"VII.

"The Plaintiffs did not notify the Chicago Police Department or any other police department about the disappearance of the luggage and its contents but relied solely and exclusively upon the Air Lines to locate the missing luggage and contents.

"VIII.

"The Plaintiffs have complied with all conditions precedent, other than notification of police, if that is required, for receiving payment for their loss under the terms of the policy, but the Defendant has denied liability under the policy on the grounds that the loss described herein is not insured under the terms of the above referred to policy of fire insurance."

The pertinent parts of the aforementioned insurance policy, incorporated in the stipulation as Exhibit "A," will be referred to as they are discussed in this opinion.

The first question we must answer is: does the loss of luggage which was checked with the airline constitute such a "mysterious disappearance" as to be covered by the extended theft provisions of an insurance policy on a dwelling, which policy covered losses of unscheduled personal property away from the premises?

The Circuit Court of Appeal of Louisiana seems to be the only court to date which has interpreted a "mysterious disappearance" clause such as presented here.

In the case of Englehart v. Assurance Company of America, 139 So.2d 108 (La. Ct. App.1961), the Louisiana court first held, in effect, that the facts and circumstances must

show a reasonable possibility that the disappearance was due to theft, for the loss to be covered under the "mysterious disappearance" clause of the insurance policy. On rehearing, the court reversed its position and required only that the disappearance be under unknown, puzzling and baffling circumstances which arouse wonder, curiosity, or speculation, or under circumstances which are difficult to understand or explain.

The first decision followed the decisions of Loop v. United States Fidelity & Guaranty Ins. Co., 63 So.2d 247 (La.Ct.App. 1953), and Deckler v. Travelers Indemnity Company, 94 So.2d 55 (La.Ct.App.1957), which involved interpretations of policies containing the provision that mysterious disappearances of any insured property should be presumed to be due to theft. As the policy in the Englehart case did not include the words "presumed to be due to theft," the court found it unnecessary to show that the loss was either "possibly or probably" theft.

In the instant case, certain parts of the policy seem pertinent to a determination of our question.

## "COVERAGE C—UNSCHEDULED PERSONAL PROPERTY

\*　　\*　　\*　　\*　　\*　　\*

"2. *Away from premises:* This policy also covers unscheduled personal property as described and limited, while elsewhere than on the premises, anywhere in the world, owned, worn or used by an Insured, or at the option of the Named Insured, owned by a guest while in a temporary residence of, and occupied by an Insured or owned by a residence employee while actually engaged in the service of an Insured and while such property is in the physical custody of such residence employee or in a residence temporarily occupied by an Insured. Property pertaining to a business is not covered.

\*　　\*　　\*　　\*　　\*　　\* "

## "EXTENDED THEFT COVERAGE

\*　　\*　　\*　　\*　　\*　　\*

"1. *Inclusion of Mysterious Disappearance:* So much of the description of the peril of theft under the caption 'Perils Insured Against,' in Section I of the form attached to this policy, as reads:

'Theft, meaning any act of stealing or attempt thereat'

is amended to to read:

'Theft, meaning any act of stealing or attempt thereat, or mysterious disappearance (except mysterious disappearance of a precious or semi-precious stone from its setting in any watch or piece of jewelry).' "

If the amendment to include "mysterious disappearance" were intended to apply only to disappearances where theft was shown to be possible or probable, the exception of mysterious disappearance of a precious or semiprecious stone from its setting would be unnecessary.

"11. *Theft* \* \* \*

\*　　\*　　\*　　\*　　\*　　\*

"*Exclusions applicable to property away from described premises:* This policy does not apply as respects this peril to loss away from the premises of: (a) property while in any dwelling or premises thereof, owned, rented or occupied by an Insured, except while an Insured is temporarily residing therein; (b) property while in the charge of any laundry, cleaner, dyer, tailor or presser except by robbery or by theft through breaking and entering at their premises; (c) property while in the mail; (d) property while unattended in or on any automobile, motorcycle or trailer, other than a public conveyance, unless the loss is the result of forcible entry either into such vehicle while all doors and windows thereof are closed and locked or into a fully enclosed and

locked luggage compartment, of which entry there are visible marks upon the exterior of said vehicle."

It should be noted that although the appellant, in drafting its contract, recognized that unclassified personal property off the insured premises could mysteriously disappear, it excluded from coverage only property left with businesses such as laundries and did not, under either the original contract or the extended coverage endorsement, exclude property left unattended in a public conveyance.

Section 9–07–19 of the North Dakota Century Code reads as follows:

"9–07–19. Uncertainty interpreted against party causing it—Presumption as to cause.—In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such a party, except in a contract between a public officer or body, as such, and a private party, and in such case it is presumed that all uncertainty was caused by the private party."

■ In the instant case, the ambiguity, if any exists, must be construed in favor of the insured.

■■ Accepting the view of the Louisiana Court of Appeal in Englehart v. Assurance Company of America, supra, that "mysterious disappearance" requires only that the disappearance be under unknown, puzzling, and baffling circumstances which arouse wonder, curiosity, or speculation, or under circumstances which are difficult to understand or explain; and, in light of our statutory rule of construction that an ambiguity, if any exists, must be construed against the party who caused the uncertainty to exist, we conclude that the disappearance of the luggage checked with the airline by the respondents, in connection with their travel, was a "mysterious disappearance" covered by the extended theft provisions of an insurance policy on their dwelling, which policy covered losses of unscheduled personal property away from the premises.

■ The second question with which we are confronted involves the effect of the failure of the respondents to notify the police of the loss of their luggage.

The pertinent provision of the policy reads as follows:

"11. *Theft* * * *

"Upon knowledge of loss under this peril or of an occurrence which may give rise to a claim for such loss, the Insured shall give notice as soon as practicable to this Company or any of its authorized agents and also to the police."

This requirement is that notice of the loss be given as soon as practicable. We may conclude from the stipulated facts that timely notice was given the insurance company. The company was then in a position to notify whomever it deemed necessary.

Where, as in this case, neither the place nor time of the disappearance could be ascertained, notice to the police would be entirely fruitless and, therefore, impracticable.

■ The third question is: where the respondents have failed to declare the full value of their luggage to the airline, are they estopped from recovering from the insurance company with which their luggage was insured more than the maximum amount payable by the airline, under the provisions of the official tariff governing passenger fares, in the event of loss of checked luggage? We think not. On the contrary, they should recover the full value of the luggage from their insurer.

■ It should be noted that there was no provision for subrogation in the insurance policy. As the policy provides that the

property covered is insured to the extent of the actual cash value of the property at the time of the loss, the plaintiffs are entitled to recover the stipulated value of the property. The trial court therefore was in error in reducing the amount of the judgment by the amount of the airline's payment.

Our statute on estoppel reads as follows:

"31-11-06. Estoppel by declaration, act, or omission.—When a party, by his own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, he shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission." North Dakota Century Code.

This statute obviously does not apply.

For the reasons stated herein, it is ordered that the case be remanded to the district court, so that the judgment may be modified to permit the respondents to recover the full value of the luggage, plus interest and costs.

MORRIS, C. J., and STRUTZ, TEIGEN and BURKE, JJ., concur.